IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOSE ALONSO GARCIA                                                                                  PLAINTIFF

v.                                            Civil No. 2:18-cv-02159

OFFICER HARRIS, Sebastian County
Detention Center; OFFICER MADDOX,
Sebastian County Detention Center; and,
OFFICER WILLMON, Sebastian County
Detention Center                                                                                    DEFENDANTS

## MEMORANDUM OPINION

Plaintiff Jose Alonso Garcia proceeds in this matter *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983. (ECF No. 1, 2, 3). In his Amended Complaint, Garcia alleges claims of failure to protect with respect to his transfer to the "green group" pod which consists of sexual offenders. (ECF No. 37).

Currently pending is Defendants' Motion for Summary Judgment. (ECF No. 40). On June 17, 2019, the Court entered an Order directing Garcia to respond to the Motion by July 8, 2019. (ECF No. 43).

Garcia filed a Response to the Motion on July 8, 2019. (ECF Nos. 46, 47). The Defendants filed a Reply to Plaintiff's Response on July 22, 2019. (ECF No. 48).[1]

---

[1] In Garcia's Response to the Motion for Summary Judgment, he appears to seek additional time for discovery. (ECF No. 47 at 2). Garcia's Response also mentions that he has witnesses that he will call to testify at trial to support his claims. (ECF No. 46 at 4). Accordingly, the Court entered an Order on September 4, 2019, addressing those contentions. (ECF No. 53). The Court's September 4, 2019 Order points out that the discovery deadline of May 14, 2019, was established in the Court's Initial Scheduling Order. The Court denied Garcia's late request to extend discover almost four months after the deadline. (ECF No. 53). However, the Court allowed Garcia until October 4, 2019, to supplement his Response to the Motion for Summary Judgment with affidavits from his witnesses. (ECF No. 53). Garcia did not supplement his Response to the Motion for Summary Judgment.

In addition, the Court must consider the facts set forth in Garcia's verified Amended Complaint in ruling on the Motion for Summary Judgment. (ECF No. 37). A verified complaint is the equivalent of an affidavit for summary judgment purposes. *See e.g., Roberson v. Hayti Police Dep't.*, 241 F.3d 992, 994-95 (8th Cir. 2001).

As the Court in *Roberson* points out, "[a]lthough a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit to survive the summary judgment motion." *Id.* The Court will "piece[] together [Plaintiff's] version of the facts from the verified complaint. Those portions of the Defendant[s'] statement of material facts that do not conflict with [Plaintiff's verified complaint] are deemed admitted." *McClanahan v. Young*, No. 4:13-cv-04140, 2016 WL 520983 (D.S.D. Feb. 5, 2016).

## I. FACTS

Along with their Motion for Summary Judgment, Defendants filed a Statement of Indisputable Material Facts in Support of Motion for Summary Judgment. (ECF No. 42). Defendants' Statement of Indisputable Material Facts is supported by the Affidavit of Captain Williams Dumas. (ECF No. 42, Ex. 1, Dumas Affidavit). In addition, attached to Dumas' Affidavit are records of the jail, including relevant arrest and booking records for Garcia, Garcia's Inmate Housing History Report, and relevant Incident Reports related to Garcia's claims in this case. *Id*. According to his Affidavit, Dumas, as custodian of the records of the jail, verifies these documents as true and correct copies of records regularly kept in the ordinary course of business at the jail. *Id*.

Although Garcia has filed a Response to Defendants' Statement of Indisputable Material Facts, Garcia has not supported any of his allegations that are contrary to Defendants' Statement of Indisputable Material Facts with affidavits, prison records or other evidence as required by Rule 56 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 56(e). The Court has previously

noted this requirement in its Order directing a response to the Motion for Summary Judgment and in its Order giving Garcia additional time to supplement his response to the Defendants' Motion for Summary Judgment with affidavits from his witnesses. (ECF No. 43, 53). The Court will therefore discuss below only the statements of Garcia's verified Amended Complaint which contradict Defendants' Statement of Material Indisputable Facts.

According to Defendants' Statement of Material Indisputable Facts:

On December 28, 2017, Plaintiff Jose Garcia was booked into the Sebastian County jail on a hold for federal authorities related to federal charges of selling methamphetamine. Garcia had previously been incarcerated in the Sebastian County jail from November 8 to December 3, 2017, before being briefly sent to the Scott County jail before a return to Sebastian County. (ECF No. 42, Ex. 1, Dumas Affidavit, Booking Records).

Garcia was initially housed in GG pod, where he stayed until April 18, 2018. Garcia's housing assignment was decided by Sebastian County's use of the Northpoint classification system, a computer-aided inmate security classification protocol that resulted in the Garcia's initial placement in GG pod, a medium security unit. (ECF No. 42, Ex. 1, Dumas Affidavit, Booking Records).

Garcia was transferred to FF pod on the evening of April 18, 2018. FF pod is another medium security pod. Garcia was transferred from GG to FF because, during a shift change briefing, Sgt. Tonna Moore found out about a notation from the U.S. Marshal's Service that Garcia and an inmate named Jose Escalante were to be kept separate (because they were co-defendants in their criminal case, not for any protection reason). Before Garcia's move to FF pod, he was being housed with Jose Escalante. (ECF No. 42, Ex. 1, Dumas Affidavit, Moore Report).

On the afternoon of July 22, 2018, Garcia came to the front of FF pod to assist the officers with the evening meal (Garcia was a 509 inmate at the time, essentially, an in-pod trustee). Officer Chase Harris noticed that Garcia was acting differently and appeared to be upset about something.

Garcia asked Harris if he could speak to him privately. (ECF No. 42, Ex. 1, Dumas Affidavit, Harris Report).

When Officer Harris spoke with Garcia privately in the hallway, Garcia initially asked Harris to "end it already and put a bullet in [my] head." (ECF No. 42, Ex. 1, Dumas Affidavit, Harris Report). According to Harris, Garcia quickly recanted and told Harris that he only made the statement because of how badly he wanted to be out of FF pod. *Id*. Harris's Incident Report states Garcia "deliberately stated he had only made claims for a bullet to the head to be removed from FF pod as any way necessary to get out of the pod. After further discussion [Garcia] stated an unnamed inmate found out about him molesting children and began accusing him of having child molestation charges in place." (ECF No. 42, Ex. 1, Dumas Affidavit, Harris Report). Officer Harris reports that Garcia "feared he would be beat up if he returned to FF pod." *Id.*

Officer Maddox joined the conversation with Garcia and Harris, and reports that Harris told him he was in fear because "an unidentified inmate had accused him of being a child molester." (ECF No. 42, Ex. 1, Dumas Affidavit, Maddox Report).

According to the Affidavit of Captain Dumas, in response to these discussions, Officers Harris and Maddox radioed their supervisor, who informed them to place Garcia in the "green group," a subset of inmates in the jail who were charged with sex offenses, and transfer him to protective custody housing in BC pod. (ECF No. 42, Ex. 1, Dumas Affidavit, Harris and Maddox Reports).

Officers Harris and Maddox state that Garcia heard the radio conversations concerning Garcia's transfer to the "green group," and also state that they explained the plan to Garcia – that he was to be moved to BC pod and placed in protective custody in BC pod. (ECF No. 42, Ex. 1, Dumas Affidavit, Harris and Maddox Reports). Harris and Maddox also contend that Garcia agreed to the transfer plan. *Id*.

When Garcia was transferred to the "green group," he was changed into a green jail uniform. (ECF No. 42, Ex. 1, Dumas Affidavit). The green uniform allows jailers to determine group membership and apply protection protocols more easily. *Id*.

The "green group" consists of all sex offenders (not just child sex offenders). The "green group" is housed in protective custody and those inmates are only let out into the common area/dayroom with other "green group" inmates. (ECF No. 42, Ex. 1, Dumas Affidavit). The "green group" inmates are even more closely monitored than other inmates in the jail. *Id*. According to Affidavit of Captain Dumas, protective custody is considered "the safest and most well protected housing area in the jail." *Id*.

On August 17, 2018, Garcia submitted a grievance, alleging that his placement in the "green group" in protective custody had subjected him to verbal harassment and fear for his safety. (ECF No. 42, Ex. 1, Dumas Affidavit). In response to Garcia's complaint about his placement in the "green group" in protective custody, the guards in his pod gave him a special housing release form. After Garcia signed the form, it was forwarded up the chain of command for review. *Id*. Such reviews are performed carefully on a case-by-case basis, since the inmate in question was placed in protective custody for a reason. *Id*.

On August 31, 2018, the command staff completed their review and authorized Garcia's transfer from BC to BB pod. BB pod is a higher security unit, where most protective custody inmates are sent if released from protective custody. (ECF No. 42, Ex. 1, Dumas Affidavit).

The Affidavit of Officer Dumas states that Garcia was never physically attacked or assaulted and never suffered any physical injuries during his incarceration at the Sebastian County jail. (ECF No. 42, Ex. 1, Dumas Affidavit).

According to his verified Amended Complaint, Garcia asserts that, initially, he simply advised Harris and Maddox that he was being threatened by other inmates, including Marcos Guiterra, and that he did not want to be in FF Pod because he was going to get hurt. (ECF No.

37). Garcia states that he asked to be placed in protective custody or in another pod. *Id.* Garcia states that there were no discussions about the fact that he was going to be placed with the sex offenders. *Id.* Garcia states that he has not been charged with sexual offenses and that he never told the Defendants he had a sex charge. *Id.*

Garcia's verified complaint states that being placed in the "green group sex offenders" pod created "a bigger problem" for him. (ECF No. 37). He states that the other inmates found out that he was in the sex offender pod which caused him to be a target. *Id*. Garcia states "that sex offenders are always victims of brutality by other inmates." *Id*. Garcia states that being placed with the sex offenders put his life "even in a higher risk" due to being labeled as a sex offender. *Id*.

Garcia states that after being moved to the sex offender cells, he told Defendant Willmon that he did not belong there. (ECF No. 37). Garcia also states that he signed "a special housing release form every week . . . which they denied me ever[y] week." *Id*. Garcia states that Defendant Willmon "knew that I was having a problem being place in with the sex offenders because I was look as one too." Garcia states "I was getting threats of being physically harm because of this. I was verbally attack by other inmates" because he was placed with sex offenders. *Id*. Garcia states that being placed with sex offenders put him "in a higher risk of harm wherever" he went. *Id*.

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine

issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

The Defendants contend they are entitled to summary judgment because Garcia presents no proof of deliberate indifference by the Defendants as required by the established law. Defendants also argue that they are entitled to qualified immunity and summary judgment as a matter of law.

Garcia's claims against the Defendants stem from Garcia's contention that Defendants failed to protect him by placing him in protective custody in a manner that indicated to other inmates that Garcia was a sex offender. Garcia further contends that Defendants' actions exposed him to an increased risk of harm and that he experienced verbal threats as a result of the transfer.

Prison officials are required to take reasonable measures to "protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 832. This duty is imposed because

7

being subjected to violent assaults is not "part of the penalty criminal offenders pay for their offenses." *Rhodes*, 452 U.S. at 347.[2]

To prevail on his failure to protect claim, Garcia must satisfy a two-prong test. He must demonstrate: (1) that he was "incarcerated under conditions posing a substantial risk of serious harm;" and (2) that prison officials were "deliberately indifferent [to his] health or safety." *See Holden v. Hirner,* 663 F.3d 336, 341 (8th Cir. 2011) (internal citations omitted). The first prong is an objective requirement to ensure the deprivation is a violation of a constitutional right. *Id.* The second, however, is subjective requiring Garcia show the Defendants "both knew of and disregarded 'an excessive risk to inmate's health or safety.'" *Id. (quoting Farmers,* 511 U.S. at 837). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk,* 508 F.3d 868, 873 (8th Cir. 2007). Negligence alone is insufficient to meet the second prong, instead, the official must "recklessly disregard a known, excessive risk of serious harm to the inmate." *Davis v. Oregon County,* 607 F.3d 543, 549 (8th Cir. 2010) (internal quotation marks and citation omitted).

As set forth above, Garcia's verified Amended Complaint states that on July 24, 2008, he told Separate Defendant Harris that he was having problems with other inmates in his pod. (ECF No. 37). Garcia requested that he be moved out of the pod and placed in protective custody. *Id*. Garcia states that Officer Willmon and Maddox were consulted and that he was then moved to the sex offender pod. Garcia states that he was placed at a "higher risk" because he was placed in the sex offender pod. (ECF No. 37). He states that because he was put in the sex offender pod he was a "target where ever I go in prison." *Id*. He states that he has seen "that sex offenders are always

---

[2] A pretrial detainee's failure to protect claims arise under the Fourteenth Amendment. *See Vaughn v. Greene County*, 438 F.3d 845, 850 (8th Cir. 2006). However, the Eighth Amendment deliberate indifference standard is applied to the claims.

victims of brutality by other inmates." *Id*. Garcia states that he received verbal threats of physical harm. *Id.* He states that the Defendants placed him in the sex offender pod even though they knew he was not a sex offender and that they should have checked to see if he was a sex offender before placing him in the sex offender pod. *Id.*

Defendants argue that Garcia has not and cannot show that they were deliberately indifferent to Garcia's safety. Defendants point to the fact that they moved Garcia into protective custody - the most protected housing area in the jail - as soon as he initially requested to be moved out of FF pod due to problems with other inmates. Defendants further argue that they are entitled to qualified immunity and summary judgment as a matter of law.

As set forth above, Garcia must first show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Holden v. Hirner,* 663 F.3d 336, 341 (8th Cir. 2011). Garcia only points to vague verbal threats and the common thought that prisoners believed to be sex offenders are at a higher risk of brutality. The Eighth Circuit has previously found that "threats between inmates are common and do not, under all circumstances serve to impute actual knowledge of a substantial risk of harm." *Prater v. Dahm*, 89 F.3d 538 (8th Cir. 1996).

It is undisputed that the "green group" is housed in protective custody and those inmates are only let out into the common area/dayroom with other "green group" inmates. (ECF No. 42, Ex. 1, Dumas Affidavit). The "green group" inmates are even more closely monitored than other inmates in the jail. *Id*. According to Affidavit of Captain Dumas, protective custody is considered "the safest and most well protected housing area in the jail." *Id*.

Garcia must also prove that that prison officials were "deliberately indifferent [to his] health or safety." *See Holden v. Hirner,* 663 F.3d 336, 341 (8th Cir. 2011) (internal citations omitted). Although Garcia argues that he complained weekly about his transfer to the "green group," and that his requests to move out of the "green group" were denied repeatedly, it is undisputed that Garcia was moved out of the "green group" pod on August 31, 2018, just fourteen

(14) days after Garcia's first documented request and just forty (40) days after Garcia's initial transfer to the "green group." (ECF No. 42, Ex. 1, Dumas Affidavit).

The facts presented simply do not demonstrate that (1) Garcia was "incarcerated under conditions posing a substantial risk of serious harm," *or* (2) that the Defendants were "deliberately indifferent [Garcia's] health or safety." *Holden,* 663 F.3d at 341.

Further, having found the facts do make out a constitutional violation, the Defendants are entitled to qualified immunity. *See, e.g., Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009).

## IV. CONCLUSION

For the reasons and upon the authorities discussed above, Defendants' Motion for Summary Judgment (ECF No. 40) should be and hereby is **GRANTED.**

Accordingly, all of Garcia's claims against the Defendants are **DISMISSED WITH PREJUDICE**. A judgment consistent with this opinion will be entered.

**IT IS SO ORDERED** this 8th day of November 2019.

*/s/ P. K. Holmes, III*
P. K. HOLMES, III
U.S. DISTRICT JUDGE